TRUEBA ET AL., PLAINTIFFS AND APPELLANTS, *v.* MARTÍNEZ ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the First District Court of San Juan in an Action for the Annulment of a Conveyance of Real Property.

No. 2792.—Decided June 27, 1924.

GUARDIAN AD LITEM—MINOR—RESIDENT—NON-RESIDENT MINORS—JURISDICTION—SUMMONS.—The theory that a court does not acquire jurisdiction to appoint a guardian *ad litem* for a minor until the minor has been summoned is reasonable when the minor is a resident, but it is not applicable to cases of non-resident minors.

ID.—ID.—JURISDICTION—SUBMISSION—SUMMONS.—When some minros appear before the court having jurisdiction because of the situs of the property in litigation and move to be and are made parties in the proceeding and a guardian *ad litem* is appointed for them, it is considered that they have submitted to the jurisdiction of the court and are bound by its decision, although they were not summoned.

ID.—ID.—The appointment of a guardian *ad litem* is a matter of procedure and not of jurisdiction.

REVENDICATION—PARTIES—COMMUNITY PROPERTY.—The doctrine laid down in *Miranda v. Registrar*, 28 P. R. R. 365, and *Muñoz v. Registrar*, 26 P. R. R. 709, is not applicable when both spouses who owned the property had died when the action was brought.

The facts are stated in the opinion.

*Messrs. M. Tous Soto* and *A. J. Amadeo* for the appellants.

*Mr. E. Acuña* for the appellees.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

The plaintiff-appellants set up two causes of action—one for the generic revendication of certain common interests in a property called Providencia and the other, which is the basis of the former, for securing an annulment of the sale of the said property made by the marshal of the District Court of San Juan to Martínez Vallés and Isern Barrancos in an action for the foreclosure of a mortgage brought by them against the heirs of María de Jesús Urrutia, the predecessors in interest of the plaintiffs.

The action of revendication is based substantially on the ownership or title claimed by the plaintiffs in the joint in-

terests sued for and on the present possession of the property by the firms of Valldejuly, Rodríguez & Company, Ltd., and Rosales & Company. In relation to the nullity of the sale of the property the following is alleged: (*a*) The acquisition of the property by Bernardo Suárez Rodríguez and his wife, María de Jesús Urrutia, during wedlock for a valuable consideration and with money of the conjugal partnership; (*b.*) the status of the plaintiffs as sole and universal heirs of the persons in whom was vested the ownership title to the property when the action for the foreclosure of the mortgage was brought; and (*c*) irregularities and omissions in the said action, to wit: 1. Lack of personal or constructive service on plaintiffs Trueba y Suárez. 2. Their failure to enter appearance. 3. Invalidity of the judgment rendered. 4. Absolute nullity *per se* of the auction sale of the property and the consequent invalidity of the conveyance made thereunder.

In their answer the defendants set up a general denial against both causes of action, denying the status of heirs alleged by the plaintiffs and the existence of the defects and irregularities of procedure recited in the complaint and alleging that on the contrary each and all of the proceedings for the foreclosure of the mortgage were correct and in conformity with the provisions of law and the practice of the courts.

In addition to their denials the defendants set up as defenses their status of hypothecary third persons, the prescription of the action of nullity and acquisitive prescription in favor of the present possessors, citing section 1858 of the Civil Code in support of the last.

The issue being thus joined, the trial court considered the case on its merits and rendered judgment dismissing the complaint. In its opinion the court set out the following findings:

"The evidence having shown that Bernardo Suárez Urrutia is living, the plaintiffs amended their complaint so as to limit their

claim to two-thirds of the estate, or what is alleged to belong to them as the sole heirs of their mother, Antonia Suárez Urrutia, of their uncle, Jesús Suárez Urrutia, and of their deceased sisters, Mercedes and María Teresa.

"We find that Bernardo Suárez Rodríguez designated as his heirs his legitimate children Bernardo, Jesús and María Antonia Suárez Urrutia and left to his second wife, Vicenta Fontanals, one-third of his estate in accordance with the provisions of the Civil Code; but it has not been proved that they are heirs of Jesús Suárez Urrutia and much less that they are his sole heirs.

"The certificate presented to prove the death of Jesús Suárez Urrutia shows that he died on February 8, 1903, but in no manner can it prove that he died unmarried and that the plaintiffs are his sole heirs, in the absence of any other kind of evidence, as in this case.

"From the evidence it appears that Bernardo Suárez, uncle of the plaintiffs, is living and has children, and this being a fact admitted by the parties, we must admit that Bernardo was an heir *in capita* with a right equal to that of all of the plaintiffs who would inherit *per stirpes*.

"The evidence also proves that when Jesús Suárez Urrutia died on February 8, 1903, he was lawfully married to Petrona de Jesús Santana, who by virtue of the provisions of sections 821 and 822 of the Civil Code then in force had recognized successory rights in both the intestate and the testate inheritance in concurrence with the descendants and the ascendants; but it is impossible in this case to determine the extent of such rights because no evidence has been offered to show whether the said Jesús Suárez Urrutia left a will, or who were his testamentary or forced heirs.

"From all of this it follows that the plaintiffs only had a right to inherit one-third of one-half from their maternal grandmother and two-ninths of the other half from their grandfather, as it is impossible to show that they inherited anything from their uncle Jesús because it has not been proved in any manner that they were testate or intestate heirs of the said Jesús Suárez.

"As in an action of revendication the burden is on the plaintiff to prove clearly his title to the property sued for so as to leave no room for doubt about the extent of that title, the court concludes that in this case it is absolutely impossible on the evidence examined to determine clearly and precisely the extent of the condominium that the plaintiffs are suing for in this action.

"The court finds that in the complaint filed by administrator

Pedro de Arana in the proceedings brought against the persons who compose the defendant succession, which proceedings are sought to be annulled, appear the names of the members of the defendant succession known to the plaintiffs, the unknown members having been summoned by publication.

"It is also proved that in those proceedings the summons was issued, for although it does not appear in the record, it is clearly deduced from the publication of the summons, as also that the court had jurisdiction because it was a real action.

"The court also finds that the order of the court in which the said proceedings were brought is valid, because it appears to have been made by virtue of an affidavit signed and filed by one of the attorneys for the plaintiffs showing to the court that some defendants lived outside of Porto Rico; that there was a good cause of action, and that they were necessary or lawful parties.

"The court finds that the minors were summoned by publication because they were absent, and that at the instance of one of them the court appointed a guardian *ad litem,* who qualified and acted as such, engaging the services of an attorney who entered appearance in the proceedings.

"It was proved that the incapacity of Benigno Trueba Gutiérrez was declared by the District Court of San Juan on October 11, 1905; that Bernardo Suárez Urrutia, who then lived in Porto Rico, was appointed as his guardian and that the latter appointed as his substitute Herminio Suárez y Suárez when he left for Spain accompanying the incapacitated Gutiérrez.

"That in 1907 Antonio Trueba Suárez, son of the incapacitated Benigno, came to Porto Rico and lived about six months at Canóvanas in the house of Fernández & Sobrino, one of whose partners was Herminio Suárez y Suárez.

"That after the action for foreclosure to which we have referred had been brought in the District Court of San Juan and service of the summons by publication on the members of the defendant succession had been ordered, during the period of publication the said Antonio Trueba Suárez entered appearance in the action by attorney E. Acuña and, alleging that he was one of the defendants in the said action as the legitimate son of Benigno Trueba Gutiérrez and María Segunda Suárez, who was a daughter and heir of María de Jesús Urrutia; that he was a minor though over fourteen years of age; that there was no person who could lawfully represent him because of the adjudged incapacity of his father, and that his legitimate brothers and sisters Benigno, Mercedes, César Carlos, Ma-

ría Luisa and Gloria, whose ages he stated, were in the same position and all of them resided in Spain, petitioned the court to appoint a guardian to represent them in the said action and the court appointed the said Herminio Suárez y Suárez.

"That the Trueba Suárez defendants were represented in that action by attorney Eduardo Acuña Aybar, designated as such by the guardian, Herminio Suárez, who acted under the instructions of the attorney and gave him all the information and data available for the defense of the minor defendants.

"That inasmuch as during the pendency of that suit the incapacitated Benigno Trueba Gutiérrez died in Spain, a family council of the Trueba Suárez minors was constituted in accordance with the Spanish law and the said council appointed Bernardo Suárez Urrutia as their guardian, the same person who had been the guardian of the incapacitated Gutiérrez, and the said family council also authorized the guardian so appointed to appear in the suit by an attorney in fact, which he did by giving power to the said Herminio Suárez y Suárez who, as has been said, had been acting in the suit as the guardian of the minors.

"The court also finds that Jesús María Inocencio Suárez Urrutia died prior to the bringing of the action and therefore could not be summoned.

"That the court in which the said case was tried rendered judgment in favor of the plaintiffs and by virtue thereof the sale was made by public auction to the highest bidder, Octavio Martínez Vallés, the property passing thereafter and being today in the possession of the defendants by reason of successive transfers.

"It was proved that the Suárez Trueba minors received from Carlos McCormick, one of the defendants in this case, the amount of a mortgage existing on the property in favor of their ancestor, Benigno Trueba Gutiérrez.

"It was also proved that the defendants had no intervention in the action brought by administrator Pedro Arana against the heirs of María de Jesús Urrutia; that the purchase title of Octavio and Petra Martínez Vallés and Adelaida and Demetria Isern was recorded in the registry of property, the record disclosing no invalidating defect, for which reason they have the status of third persons.

"The court also finds that the marshal of the District Court of San Juan, on November 20, 1909, sold at auction the property sued for to Octavio and Petra Martínez Vallés and Adelaida and Demetria Isern Barrancos; that Adelaida and Demetria Isern sold their interests on January 4, 1910, to Marcos Tomás Caneja; that on

January 5, 1910, the latter and his wife sold this property to José E. Benítez Castaño.

"That on March 30, 1910, Octavio Martínez Vallés, Petra Martínez Vallés and the spouses José E. Benítez Castaño and Carlota Benítez Carrillo sold the whole property to Rafael López Landrón and on the same day Rafael López Landrón and his wife sold it to Juan Carlos McCormick.

"The court also finds that on May 20, 1910, Juan Carlos Mc-Cormick and his wife sold the property to the mercantile firm of Rosales & Company and that on September 15, 1919, the said property was acquired by Enrique González y Rodríguez by purchase at public auction from Manuel V. Domenech, trustee in bankruptcy of the corporation Carolina Sugar Company, and that Enrique González and his wife sold the property on December 10, 1919, to the civil agricultural and industrial partnership of Valldejuly, Rodriguez & Company, Limited, all of these transfers being recorded in the registry of property."

On appeal to the Supreme Court the appellants assign the following errors:

"First.—Failure to recognize the Truebas as heirs of the deceased Jesús Suárez y Urrutia contrary to the right given by sections 886, 914, 916 and 920 of the Civil Code.

"Second.—Holding that the action was barred by unduly applying section 1267 of the Civil Code, mistaking the action of nullity of contract for that of annulment of judicial proceedings and nullity of contract set up by the plaintiffs.

"Third.—Recognizing that the defendants had acquired by prescription the ownership of the Providencia property by unduly applying section 1858 of the Civil Code.

"Fourth.—Giving to the judgment rendered in the action brought by the heirs of Pedro Arana against the heirs of María de Jesús Urrutia, apart from the invalidity of that judgment, an improper extent so as to hold Bernardo de Jesús Suárez y Rodríguez bound by it, albeit he was not a party to the obligation sued on nor even named in that action.

"Fifth.—The trial court committed also an error of law sufficient to warrant the reversal of the judgment in admitting in evidence deed No. 54 executed in Barcelona, Spain, on January 15, 1909, before notary Antonio Gallardo y Martínez, for the purpose of proving the constitution of the family council of the Trueba y Suá-

rez minors, the appointment of a guardian by the said family council and the acts of the guardian, and also in considering the said deed sufficient proof of the said acts.

"Sixth.—In holding the validity of the foreclosure proceedings brought in the District Court of San Juan by Pedro Arana, first by his administrator and later by his heirs, Martínez Vallés and Isern Barrancos, against the heirs of María de Jesús Urrutia, and in holding that the judgment was valid and the sale of the Providencia property to the defendants was invalid.

"Seventh.—In unduly applying article 34 of the Mortgage Law and failing to apply article 33 thereof, ignoring that the action was based on a title recorded in the registry of property prior to the record relied upon by the defendant, and ignoring also that there are defects or rights of action which appear clearly from the record of the title in the registry of property.

"Eighth.—In adjudging the validity of the sale of the Providencia property and of the proceedings that culminated in the sale, and the validity of the record in the Registry of Property of San Juan of the sale of the said property to Octavio and Petra Martínez Vallés and Adelaida and Demetria Isern Barrancos the judgment appealed from infringes the Fifth Amendment to the Constitution of the United States which declares the universal principle of law that no one can be deprived of his property without due process of law and the rule of political law that private property shall not be seized without just compensation, inasmuch as the proceedings in the action in which the sale was ordered, the sale itself and the record in the registry of property of the sale of the Providencia property do not constitute due process of law and the application of article 34 of the Mortgage Law with the construction put upon it in the judgment appealed from amount to the seizure of private property without a hearing and without just compensation."

The appellants argue each assginment from so many different aspects and in such detail that the brief is of unusual length, but it represents great research and painstaking and able efforts.

As the action of revendication is based on the nullity of the proceedings that in the foreclosure action served as a basis for the title of the defendants and the said action grew out of the defects of or omissions in said proceedings,

in order to determine whether the title of the appellants should be given legal effect and be considered paramount to that of the appellees it seems more logical that we should take up first the sixth assignment in which the said omissions or defects are imputed, for it depends upon the conclusion thus reached whether or not it will be necessary to consider the other assignments of error. In any event we shall change the order of the assignments in the way that the natural development of the discussion may require.

The errors of procedure assigned by the appellants as committed in the foreclosure action may be divided into two groups. In the first we shall include what may be termed mere irregularities, and in the second those omissions or defects that partake of the character of jurisdictional defects.

The alleged violation of section 251 of the Code of Civil Procedure in the manner of giving notice of the sale is a mere irregularity which does not affect a purchaser in good faith and can not be considered in a collateral action like this for the annulment of the judicial sale of the mortgaged property. *Henna et al.* v. *Saurí & Subirá,* 22 P.R.R. 776, and *Solá* v. *Castro et al.,* 32 P.R.R. 740.

It is urged in the first place as a jurisdictional question that the Trueba Suárez minors were not summoned either personally or constructively.

The allegation of the appellants is based on the fact that the original summons is not included in the record. The trial court admitted that the original summons did not appear in the record, but concluded that it existed by inference from its publication in the notice of sale. The point thus decided becomes for the purpose of its consideration a legal question. However, all of the questions raised by the appellants in connection with the denial of the existence of the original summons and the irregularities assigned as rendering the summons by publication insufficient are unimportant at this stage, inasmuch as the Trueba Suárez

minors, duly represented, entered appearance and pleaded all of the defenses and privileges available to them during the prosecution of the action for the foreclosure of the mortgage. The first notice summoning the said minors was published on April 23, 1907, and three days before its publication, or on April 20, 1907, Benigno Trueba y Suárez, one of the minor defendants, invoking sections 56 and 57 of the Code of Civil Procedure, entered appearance in the case and moved for the appointment of a guardian to represent him and his brothers and sisters, defendant-appellants, in the action brought against them. The order of the trial court appointing Herminio Suárez as guardian *ad litem* of the minors is dated April 25, 1907.

Notwithstanding the appearance of the minors on the said date and the appointment of a guardian to represent them, the statutory period for demurring to or answering the complaint was allowed to expire and on July 11, 1907, their default was entered. On August 5, 1907, invoking the provisions of section 140 of the Code of Civil Procedure, they moved to open the default and the court sustained the motion by an order of August 12, 1907. In the record of the foreclosure action, which is in narrative form and not a literal copy of the proceedings in that action, it appears also that the complaint was demurred to and answered and that after the case had been tried on its merits judgment was rendered for the sale of the mortgaged property in payment of the mortgage. It also appears that in the said pleadings in defense the attorney entered appearance in the name of the guardian and directly in the names of the minors. These pleadings are not transcribed literally. The transcript in narrative form is not a true copy of the proceedings, and when its language is not clear or its interpretation is doubtful, the benefit of the doubt should be in favor of the correctness of the proceedings. The fact that the attorney appeared in the name of the guardian *ad litem* implies the acceptance of the office by the guardian and it

is not necessary that his express acceptance should appear otherwise.

But the appellants plead lack of jurisdiction in the trial court to appoint a guardian for the Trueba Suárez minors because they were not summoned personally. If the language of the complaint in the action of foreclosure is observed, it will be noticed that the citations of authorities made by the appellants are very far from applicable to the present case. In the complaint it was alleged that the deceased María Segunda Suárez Urrutia was survived by her husband and several children, but it was alleged also that the plaintiff had no information as to the number of children or their names or residences. From this allegation it is deduced that the heirs of María Suárez Urrutia did not reside in Porto Rico and that their ages were unknown.

In the case of *Dapena* v. *Estate of Dominicci,* 12 P.R.R. 64, it was held that "where a complaint is brought against an estate, it should designate the name of each of the heirs or give some reason to justify the omission." We can consider as a sufficient reason in this case that it was out of the reach or knowledge of the mortgagees to determine the number, residence and other personal conditions of the members of the defendant succession.

"There is no statement in the affidavit or pleadings as to the age of these minors. To sustain the proceedings of the court below, we must presume, until the contrary is made to appear, that these minors were over the age of fourteen years, and in such case the law required no service of summons or complaint on the mother, or other person having them in charge." *Emeric* v. *Alvarado,* 64 Cal. 597.

The theory of the appellants that a court acquires no jurisdiction to appoint a guardian for a minor until the minor has been summoned is reasonable when the minor is a resident, but it is not applicable to cases of non-resident minors. The reason for this discrimination seems to be the logical assumption that a minor resident in Porto Rico

can be found and is within the territorial jurisdiction, for which reason he should be summoned personally.

On the other hand, this is a case of a real action to foreclose a mortgage, and it makes no difference that an ordinary action was resorted to for that purpose. The court had jurisdiction by reason of the situs of the mortgaged property and it has been held that when minors appear and move to be made parties to the proceeding and are admitted and a guardian *ad litem* is appointed to represent them, it is considered that they have submitted to the jurisdiction of the court and are bound by its judgment, even though no summons may have been served on them. This is what occurred in the proceedings attacked by the appellants.

"If, however, the action is one quasi in rem, seeking not a personal judgment but an adjudication of the title to some property, and the court has jurisdiction by reason of the location of the property, substituted service may be good against infants, as well as against adult defendants, and in such an action the judgment has been held binding so as to give good title to a purchaser on judicial sale as against infant owners for whom a guardian ad litem was appointed, who employed counsel and made defense, though there was no service at all upon the infants. * * * Where the infants appeared and petitioned to be made parties, and they were thereupon admitted and a guardian appointed for them, it has been held that they were before the court and bound by its judgment, though no service was ever made upon them." 14 R.C.L. 285.

The very nature of the real action set up in the ordinary proceedings for the foreclosure of the mortgage destroys any importance of the question raised by the appellants that it was necessary to attach the mortgaged property in order to give the trial court jurisdiction over the defendants in that action.

"This procedure is constitutional only when the action is for the purpose of affecting the status of the defendant. If the object of the action is to subject the property of the defendant within the state to execution issued on a judgment against him, such prop-

erty must be attached at the inception of the proceeding. After attachment, and a publication of summons in the manner provided by statute, the action becomes, in effect, a proceeding *in rem* against the property attached, and the judgment is *in rem* against such property, and not *in personam* against the defendant. A judgment rendered against a defendant not personally served with process, and whose property had not been attached, would be void for want of due process of law. This important doctrine has been recently established by the Supreme Court of the United States, and it is, of course, binding on all state courts, notwithstanding the statutes of many states, as in California, attempt to authorize a judgment against a person not served upon a mere publication of summons.'' 2 Estee's Pleadings, 899.

"Pennoyer v. Neff, 95 U. S. 728; Hart v. Sansom, 110 id. 151; Belcher v. Chambers, 53 Cal. 635; Denny v. Ashley, 12 Col. 165; Smith v. Montoya, 1 West Coast Rep, 152; McKinney v. Collins, 88 N.Y. 216; see Perkins v. Wakeham, 86 Cal. 580; 21 Am. St. Rep. 67. The foreclosure of a mortgage is in its nature a proceeding *in rem* against the mortgaged property, and summons may be served on a nonresident by publication. La Fetra v. Gleason, 101 N.Y. 246.'' *Id.*, note 99.

The appellants insist however, that the appointment of the guardian is void because in the petition and appointment the requirements of section 77 of the Special Legal Proceedings Act of March 9, 1905, and section 230 of the Civil Code were not complied with. As these statutes are adjective in character we do not think they can prevail over the general provisions of the Code of Civil Procedure which have the same object. The appointment of a guardian was moved for and granted in accordance with sections 56 and 57 of the Code of Civil Procedure, equivalent to sections 372 and 373 of the California Code of Civil Procedure. According to these statutes the appointment of a guardian rests in the sound discretion of the court, although the minor may have a general guardian. In this view of the case its discussion can not be influenced by the appointment of a guardian for the minors Trueba Suárez made in Spain by the family council in favor of Bernardo Suárez Urrutia

because of the insanity and consequent incapacity of the father of the said minors, he having been adjudged incapacitated by the District Court of San Juan. In view of these premises it is also unnecessary to consider the fifth error assigned referring to the admission by the trial court of a certain power of attorney tending to show the appointment of a guardian for the minors made in Spain by the family council, and thus determine its legal effect in this case.

The following case illustrates the manner of petitioning for the appointment of a guardian *ad litem:*

" * * * In fact we do not think a petition in writing for such appointment is required. The appointment is to be made on application. * * * And this application may be made *ore tenus* in open court as well as in writing. Although it would be better practice to file a petition alleging the facts requisite to show the jurisdiction of the court, still it would not be *mala praxis to make the application for such appointment* orally." *Emeric* v. *Alvarado,* 64 Cal. 594.

In any event jurisprudence holds that the appointment of a guardian *ad litem* is a matter of procedure and not of jurisdiction.

"The appointment of a guardian *ad litem* for an infant defendant, like the appearance of a next friend for an infant plaintiff, is matter of procedure and not of jurisdiction. That either plaintiff or defendant was without such representative makes the judgment erroneous, but not void. It can be overthrown by writ of error *coram nobis,* or by motion in the same court, or by proper appellate proceedings; but, it is generally held that the validity of the judgment cannot be attacked for this reason in a collateral action, in which the judgment comes only incidentally in issue." 14 R.C.L. 286.

In the fourth assignment the appellants allege that even assuming that the proceedings in question were lawful, they can not affect Bernardo Suárez y Rodríguez, the maternal grandfather of the minors and father of the other defendants.

The alleged reason for this is that half of the property in controversy appeared recorded in the registry of property in the name of Bernardo Suárez Rodríguez as community property because of the death of his wife, María de Jesús Urrutia, and, therefore, the judgment could only affect the half belonging to her heirs.

To elucidate the contention of the appellants on the point it will suffice to bear in mind that the property was community property; that it was subject to a mortgage; that the proceedings attacked were for the foreclosure of the mortgage, and that the judgment did not and could not bind the widower Bernardo Suárez Rodríguez, for he had died before the action was brought. This fact was alleged in the eighth paragraph of the complaint in that action. It was alleged also that María de Jesús Urrutia was dead and that the court had designated as her heirs Bernardo Suárez Rodríguez and their legitimate children Bernardo, Jesús and Antonia Suárez Urrutia, of whom the widower and two children had died, the action being against the surviving child and the heirs of the deceased heirs, who were the persons that appeared to have an interest in the suit, among them the appellants.

The cases of *Miranda* v. *Registrar,* 28 P.R.R. 365, and *Muñoz* v. *Registrar,* 26 P.R.R. 709, cited by the appellants, are not applicable to this case. In those cases the starting point was, as it had to be, that one of the spouses survived and necessarily had to be summoned because of his character as special heir independent of the other heirs. But in this case both spouses had died when the action was brought.

If all the questions that have been considered do not affect the judgment or the sale of the property made in the ordinary action of foreclosure which the appellants attack, it seems logical to say that it is unnecessary to determine whether the defendants are hypothecary third persons as

alleged in the seventh assignment contained in the brief of the appellants.

The same may be said of the first error assigned referring to the capacity of the appellants as heirs of their respective ancestors, this being the fundamental basis of their alleged right to recover. Because whatever may be the right of the appellants in this connection and whatever may be their interests in the property in controversy, the fact is that such rights, the essence of their cause of action, were extinguished by virtue of the foreclosure of the mortgage, a proceeding ultimately upheld as lawful. In passing, however, we will say that although the appellants in their complaint allege that their rights vested in them as successors of their mother, Antonia María Suárez Urrutia, and their uncles, Bernardo and Jesús María Suárez y Urrutia, who in turn were the successors of their parents, Bernardo Suárez Rodríguez and María de Jesús Urrutia, yet the evidence showed that Bernardo Suárez Urrutia had not died and the complaint was amended during the trial, leaving only the claim derived from the other ancestors. It also appears that Bernardo Suárez Rodríguez married a second wife, Vicenta Fontanals, to whom by his will he left one-third of his estate, and it also appears that Jesús María Suárez Urrutia died intestate while married. We will say briefly that as a consequence of these facts the theory of the complaint that the appellants are the sole and universal heirs of their uncle Jesús María is not supported by the evidence. He died in 1903 when the revised Civil Code was in force and the hereditary rights of his wife, Petrona de Jesús Santana, are governed by the provisions of that code. Perhaps it might have been interesting to follow counsel for the appellants in his dissertation on sections 821 and 822 in attempting to show their inconsistency with other provisions of the code and the impossibility of applying them to any case, but aside from the fact that this court has already construed the said sections (*Julbe* v. *Guzmán,* 16 P.R.R. 502),

it is not necessary to insist on their due application in view of the conclusion that we have reached. It seems necessary to say, however, that the only undivided interest of the minors that could be easily determined was that proceeding from the half interest of their maternal grandmother as community property. This would represent one-sixth. But whatever may be the rights of the appellants in this connection, their interests derived from their maternal grandfather would be rights without legal interest or life because of the foreclosure of the mortgage existing on the property which by successive transfers came into the possession of the defendants.

We will not close without mentioning the error that the appellants assign in the failure of the trial court to adjudge the nullity of the judgment as being the result of a proceeding in which minors intervened.

This, it will be noticed, is a question of fact. About it the attorneys for both parties, including the attorney for the appellees, testified. The court believed the explanations of the attorney for the appellees and as a matter of credibility we do not find that the court erred in adjusting the conflict, if any, in favor of the appellees.

By virtue of all of the foregoing the judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf took no part in the decision of this case.